JONATHAN I. BROOME

v.

THE NEW YORK AND NEW JERSEY TELEPHONE COMPANY.

A mandatory injunction requiring a telephone company to remove their poles from the highway in front of complainant's premises, and forbidding them to erect others there, granted. The complainant's consent to their erection had not been obtained nor his lands condemned therefor; the only permission claimed by the company being that of a public road board, whose authority to grant it did not appear, and the complainant having been vigilant and persistent in protesting against the invasion of his rights, and in resorting to this court for redress.

Bill for an injunction. On bill and affidavits and order to show cause thereon, and affidavits on the part of defendants.

Broome *v.* New York and New Jersey Telephone Co.

*Mr. H. Wallis*, for complainant.

*Mr. M. Egleston* (of New York), for defendants.

THE CHANCELLOR.

The complainant seeks relief against an invasion of his proprietary right to his land. The defendants, a telephone company, without any leave or license from or consent by him, but, on the other hand, against his protest and remonstrance and in disregard of his warning and express prohibition, and without condemnation or any steps to that end, set up their poles upon his land. And they make no claim or pretence of any warrant or authority whatever, except permission given by the Essex public road board, not to them, but to the Bell Telephone Company of New Jersey, whose successors they claim to be. It is enough to say on that head that it does not appear that the road board had any power to authorize any one to set up poles in the land of the highway, and thus subject the land to an additional servitude besides that for which it was condemned What has been said is sufficient of itself to establish the right of the complainant to relief; for, in order to justify the defendants in setting up the poles, it is necessary for them to show that they have acquired the right to do so, either by consent or condemnation from the owner of the soil. The designation by the city or town authorities of the streets where the poles may be set up is not enough.

The act "to incorporate and regulate telegraph companies" (*Rev. p. 1175 § 8*), while it provides that the companies incorporated under that act shall, before setting up the poles in the streets of any incorporated city or town, get from such city or town a designation of the streets in which the poles shall be placed and the manner of placing them &c., expressly provides, also, that the consent in writing of the land-owner must first be obtained before the poles shall be set. The supplement to the act (*P. L. of 1880 p. 201*), provides that upon application of any telegraph or telephone company, organized under the original act, to the common council or other legislative body of any incor-

porated city or town through which it is intended to construct the lines, the designation shall be made; and it provides, also, for a condemnation in case the owner of the soil refuses his consent to the setting of the poles in his land. It is wholly unnecessary in this case to pass upon the question raised upon the argument, whether the township of East Orange, which has special municipal powers, is an incorporated town within the meaning of the above-mentioned eighth section of the original act. When the bill was filed, the defendants were proceeding with the erection of the poles, and before the order to show cause (which contained an *ad interim* stay) could be served, they had, it appears, finished setting them. They now urge that if an injunction be awarded, it should not be such as to require them to remove the poles, but should, at most, merely prohibit them from putting the cross-arms and wires thereon. But as before stated, their action in setting the poles was in complete defiance of the complainant's rights. There has been no delay in his application to this court for relief. The fact that the setting of the poles is finished is due to the activity of the defendants in completing the work, all of which was done after his earnest assertion of his rights. Where a defendant thus invades the proprietary rights of a complainant, he has no ground for asking that the court will give him the benefit of his activity and persistence in wrong doing. The defendants have had an opportunity of making defence under the order to show cause. They have not seen fit to answer, but have put in affidavits. They have shown neither warrant nor excuse for the act of which the complainant complains. Under such circumstances the court will not hesitate, in a proper case, to grant a mandatory injunction. *Whitecar* v. *Michenor*, *10 Stew. Eq. 6.* This is such a case. Where there is a deliberate, unlawful and inexcusable invasion, by one man, of another's land, for the purpose of continuing trespass for the trespasser's gain or profit, and there has been neither acquiescence nor delay in applying to this court for relief, the mere fact that the trespass was complete when the bill was filed will not prevent an injunction in the nature of a mandatory injunction against the continuance of the trespass. *Joyce Prin.*

*Inj. 64.* In *Goodson* v. *Richardson, L. R. (9 Ch. App.) 221,* where water pipes had, without the consent of the owner of the soil, been laid in the soil of a highway, an injunction to restrain the continuance of the nuisance was granted. If the delay necessary to make application for relief gives the trespasser an opportunity to complete his trespass, that should not deprive the injured party of his claim to relief. It cannot convert the lawless misdeed of the wrong-doer into an equity in his favor.

There will be an injunction prohibiting the defendants from setting poles upon the lands in question, and from allowing those which they have placed there to remain.